UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-3471 JGB (Ex)** | Date | March 12, 2026 |
|---|---|---|---|
| Title | ***Justin Robles v. Les Schwab Tire Centers of Central California, LLC, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order (1) DENYING Plaintiff's Motion for Remand; and (2) VACATING the March 23, 2026, Hearing (IN CHAMBERS)**

Before the Court is a Motion for Remand filed by Plaintiff Justin Robles.  ("Motion," Dkt. No. 10.)  The Court finds the Motion appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion.  The Court **VACATES** the hearing set for March 23, 2026.

## I.    BACKGROUND

On October 21, 2025, Plaintiff filed a Complaint in the Superior Court of California for the County of San Bernardino against Defendants Les Schwab Tire Centers of Central California, LLC ("Les Schwab" or "Defendant") and Does 1-100.  ("Complaint," Dkt. No. 1, Ex. A.)  The Complaint alleges ten causes of action: (1) violation of California Labor Code ("CLC") §§ 510 and 1198 for unpaid overtime; (2) violation CLC §§ 226.7 and 512(a) for unpaid meal period premiums; (3) violation of CLC § 226.7 for unpaid rest period premiums; (4) violation of CLC §§ 1194, 1197, and 1197.1 for unpaid minimum wages; (5) violation of CLC §§ 201 and 202 for final wages not timely paid; (6) violation of CLC § 204 for wages not timely paid during employment; (7) violation of CLC § 226(a) for non-compliant wage statements; (8) violation of CLC § 1174(d) for failure to keep requisite payroll records; (9) violation of CLC §§ 2800 and 2802 for unreimbursed business expenses; and (10) violation of California Business & Professions Code § 17200, et seq.  (See Compl.)

On December 19, 2025, Defendant removed the action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711. ("Notice of Removal," Dkt. No. 1.)  On January 20, 2026, Plaintiff filed a Motion to Remand.  (Mot.)  Defendant opposed the Motion on February 2, 2026.  ("Opposition," Dkt. No. 11.)  Plaintiff replied in support of the Motion on February 9, 2026.  ("Reply," Dkt. No. 14.)

## II.    LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs."  Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015).  "In determining the amount in controversy, courts first look to the complaint.  Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith."  Id. at 1197 (quotations omitted).   "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged."  Id.

Where a plaintiff makes a factual attack in the context of CAFA jurisdictional requirements, defendants are required to support their jurisdictional allegations with proof typically considered at summary judgment.  A factual attack "contests the truth of the . . . allegations" themselves.  Id. (citation omitted).  "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold."  Id.  (quoting Ibarra, 775 F.3d at 1197).  A factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence."  Harris v. KM Indus., Inc., 980 F.3d 694, 700 (9th Cir. 2020) (citing Ibarra, 775 F.3 at 1199 (finding that it is sufficient to "contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence")).

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014).  But if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Id.  The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount."  Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted).  The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal."  Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted).  "[A] defendant

cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Id. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

### III.  DISCUSSION

Plaintiff argues that Defendant's Notice of Removal fails to establish that the amount in controversy exceeds $5 million as required under CAFA. (Mot. at 1.)

Specifically, Plaintiff argues that Defendants' evidence supporting their amount-in-controversy calculations in the notice of removal is insufficient. In Dart Cherokee, the Supreme Court held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by [28 U.S.C.] § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." 574 U.S. at 89. Here, such evidence is necessary because Plaintiff disputes the allegations in Defendants' Notice of Removal. But the evidentiary burden is not limited to Defendant. Dart Cherokee is clear that, once a motion for remand is in play, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 88. Here, Plaintiff has offered no declaration clarifying the scope of his allegations. Defendant, on the other hand, has offered evidence by declaration supporting the calculations in the Opposition.

Plaintiff's next argument is that Defendant's calculations include employees of a corporate entity who is not a party to the case. Defendant argues that employees of both Les Schwab Tire Centers of Central California, LLC ("Les Schwab Central CA") and Les Schwab Tire Centers of California, LLC ("Les Schwab CA") should be counted for calculating the amount in controversy because Les Schwab Group Holdings, LLC is the sole member of these two single member Les Schwab limited liability companies. (Opp'n at 7-8.) While the Court recognizes that the Complaint makes allegations against "Defendants," it only lists Les Schwab Central CA and Doe Defendants. At this stage, the Court will only consider the Les Schwab Central CA putative class members, not those who worked for Les Schwab CA.

Third, Plaintiff argues that Defendant's calculations rely on unreasonable and unsupported violation rates and inflated minimum wage values, rather than more conservative estimates. In its Opposition, Defendant substantially reduces the number of employees it uses to calculate the amount in controversy and takes a more conservative approach to most of its

---

**CIVIL MINUTES—GENERAL**                     Initials of Deputy Clerk NPO

calculations.  (Opp'n at 19-24.)  Those calculations are provided by Bethany Graham, Defendant's Vice President of Human Resources.  ("Graham Supp. Decl.," Dkt. No. 11-2.)  The Ninth Circuit has repeatedly relied upon declarations by company officers who have reviewed records relevant to a claim.  See Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 397 (9th Cir. 2010); Jauregui v. Roadrunner Transportation Servs., Inc., 28 F.4th 989, 991(9th Cir. 2022).  This is especially so where the Complaint itself does not allege that damages will be less than $5 million.  See Lewis, 627 F.3d at 398.  Graham's estimates are tied to the text of the Complaint, which alleges a "pattern and practice of wage abuse" and the data available to Defendant, namely the number of employees affected and the lowest average salary for those employees.[1]  (See Compl. ¶ 25.)

Plaintiff complains that "Graham's Supp. Decl. still does not identify the actual number of uncompensated hours worked, the frequency with which alleged violations occurred, or any methodology tying Defendant's assumptions to the allegations in the Complaint."  (Reply at 2.) But Plaintiff's statement essentially amounts to a contention that Defendant should have to prove Plaintiff's case for him in response to a motion for remand.  That is surely not required. Plaintiff's argument that Defendant's calculations rely on unreasonable assumptions, including related to the violation rate, fare no better.  Plaintiff offers no preferred violation rate—the Motion and Reply are heavy on objections to Defendant's approach, but light on evidence in support of an alternative calculation.

It is, of course, possible the language in Plaintiff's Complaint "could support a lower violation rate as easily as it could support the violation rate that [Defendant] assumed. But that does not automatically render the rate assumed by [Defendant] unreasonable. And if [Plaintiff] believed that some other assumption would have been *more* reasonable, [he] was free to propose that rate. ([He] was also free to use some more specific phrase[s] . . . when drafting the complaint; had [he] done so, [he] could have constrained the range of assumptions that [Defendant] could reasonably adopt.)"  Perez v. Rose Hills Co., 131 F.4th 804, 810 (9th Cir. 2025).

In any event, many of the assumptions made by Defendant have been approved by the Ninth Circuit or other district courts.  The Ninth Circuit has found it reasonable to assume a full 30-day violation period in wages owed claims for every putative class member where the Complaint offers no further detail.  See Jauregui, 28 F.4th at 993–94.  Defendant calculated the unpaid overtime claim at a 15-minutes-per-week rate, which is far lower than the rate approved in

---

[1] Plaintiff's counsel in the Reply submits a declaration indicating that Plaintiff's pay rate was $18.65 per hour, while Graham uses a $20.02 per hour pay rate, which is said to be "[t]he lowest average monthly hourly rate paid to putative class members."  (Reply at 2; Graham Supp. Decl. ¶ 5.)  Plaintiff contends that this calculation includes employees of Les Schwab CA, not just Les Schwab Central CA employees.  (Reply at 5.)  Even if Plaintiff's $18.65 per hour rate were used in every instance where Defendant used $20.02 per hour, the amount in controversy still exceeds $5 milliona *before* attorneys' fees.

other cases.  See Stanley v. Distribution Alternatives, Inc., 2017 WL 6209822, at *2–3 (C.D. Cal. Dec. 7, 2017); Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3–5 (C.D. Cal. June 22, 2017).  As to wage statement violations, Courts in this district have repeatedly found that 100% violation rate assumptions are appropriate when the Complaint is insufficiently precise to limit the assumption.  See Lucas v. Michael Kors (USA), Inc., 2018 WL 2146403, at *9 (C.D. Cal. May 9, 2018); Alfaro v. Banter by Piercing Pagoda, 2022 WL 1284823, at *3 (C.D. Cal. Apr. 29, 2022).

Plaintiff's broad, unspecific approach to pleading, and his refusal to offer alternative violation rates, weigh toward granting Defendant the leeway to calculate the amount in controversy as it has.  Even without attorneys' fees, Defendant's conservative estimates of the amount in controversy align with those approved by other courts.  Accordingly, Defendant has met its burden to establish that the amount in controversy exceeds $5 million.

Because the amount in controversy requirement is satisfied, the Court **DENIES** Plaintiff's Motion.

## IV.    CONCLUSION

For the reasons above, the Court **DENIES** Plaintiff's Motion.  The March 23, 2026, hearing is **VACATED**.

**IT IS SO ORDERED.**